JACKSON, *ex dem.* POTTER, *against* LEONARD AND OTHERS.

L. having, by his agent, B, agreed to purchase a farm of F. for 2,000 dollars, advanced the money to B., for the purpose of completing the purchase; and B paid to F. 1,000 dollars, and gave his bond to F. to pay off a prior mortgage, for the like sum, to P., retaining the 1,000 dollars unknown to L. *Held*, that though P. knew of B.'s retaining the 1,000 dollars, instead of paying off the mortgage, and had agreed with B. that the mortgage should be paid by land, for the purchase of which he had entered into an agreement with B., which agreement, however, was not performed by B; yet his title under the mortgage was not affected by the arrangement, there being no fraud on his part; but that L. must bear the loss arising from the misconduct of his own agent.

EJECTMENT for lot No. 88., in *Manlius*, tried before Mr. Justice *Van Ness*, at the *Onondaga* circuit, in *June*, 1815. A verdict was taken for the plaintiff, subject to the opinion of the

court, on a case containing the following facts.: Both parties claimed under *Lebbeus Foster ;* the plaintiff, under a mortgage from *Foster* to the lessor of the plaintiff, dated the 14th of *March,* 1806, for securing the payment of 1,000 dollars lent, in which it was expressly agreed that, for the use of that sum, *Potter* should have the use of the premises for two years ; and if the money was not paid at that time, *Potter* was to keep possession until it was paid, and have the use of the premises for the use of the money. To the execution of this mortgage *Charles B. Bristol* was a subscribing witness. The mortgage was not registered.

The defendant gave in evidence an absolute deed, with warranty, from *Foster* to *Leonard,* dated the 20th of *January,* 1808, and duly recorded on the day of its date.

*Charles B. Bristol,* who had been discharged under the insolvent act, was sworn as a witness for the defendant. He testified that he made the purchase of the premises of *Foster,* in the name of *Leonard,* and for his benefit, for 2,000 dollars ; that, previous to the purchase, *Leonard* viewed the lot while *Potter* was in possession. The witness stated to *Foster* that *Leonard* had sent, by him, the 2,000 dollars for the land, and he paid *Foster* 1,000 dollars, and gave a bond conditioned to pay 1,000 dollars, due on the mortgage to *Potter,* who was then in possession of the premises ; retaining the other 1,000 dollars, which was unknown to *Leonard.* The reason assigned for retaining the 1,000 dollars, by the witness, was, that he was in treaty with *Potter* for the sale of 300 acres of land in *Pompey,* at 9 dollars per acre ; being part of 600 acres which the witness had contracted to purchase of *James Sackett ;* and *Potter* proposed that the 1,000 dollars, due from *Foster,* should be applied towards the first payment for the land in *Pompey,* which was, accordingly, agreed to be done. *Potter* removed from the premises, and went into possession of the land in *Pompey,* and the witness took possession of the premises for *Leonard.* The agreement was not in writing, though intended to be so. *Potter* was to discharge the mortgage. The witness was unable to fulfil his contract with *Sackett,* and gave it up, relinquishing what he had paid, about 350 dollars, at the instance of *Potter,* who said he could make another contract with *Sackett ;* and it was not until after he had made a contract with *Sackett* that *Potter* said any thing about the mortgage money.

*Foster*, also, was a witness for the defendant, and testified, that he made the contract for the sale of the land to *Leonard*, with *Bristol*, for 2,000 dollars, and executed the deed to *Leonard*. That *Bristol* paid 1,000 dollars in cash, and gave his bond, conditioned to pay *Potter* the amount of the mortgage, and to indemnify the witness against it; that it was in consequence of the advice and request of *Potter* that he took the bond. *Potter* told him that he was about making a purchase from *Bristol* of land in *Pompey*, and in that way he was to be paid the 1,000 dollars, and the witness to be discharged from it. That, not long since, he was surprised by being told by *Potter*, that something had taken place between him and *Bristol*, in consequence of which he should have to come back to the witness for the 1,000 dollars.

*Randall*, for the plaintiff, contended, 1. That *Bristol*, the agent, having notice of the mortgage to *Potter*, it must be deemed equivalent as notice to *Leonard*, his principal.* And having such notice of the existence of the prior mortgage, he is equally bound as if the mortgage had been duly registered.†  2. That parol evidence of a discharge of the mortgage was inadmissible. A fee cannot be conveyed, or transferred, unless by an instrument under seal.‡ There can be no implied surrender without a consideration.§ And nothing appears to have passed between the parties.

* 4 Cruise's Dig. 353. 362. 9 Johns. Rep. 163. Sugden's, Law of Vend 498. 2 Ves 440.
† 10 Johns. Rep. 457 460. 4 Dallas, 145.
‡ 2 Johns. Rep. 430 12 Johns. Rep 76
§ Burr. 1980. 1 Wm. Bl 617. Burr. Rep. 211.

*Van Vechten*, contra. That the agreement was not reduced to writing was the fault of *Bristol* and *Potter*. Their neglect to reduce it to writing must be considered collusive and fraudulent, as it respects *Leonard*. If the agreement had been in writing, it will not be pretended that the parties would not have been bound; and shall they be permitted to object to their own fraudulent neglect? Can this agreement be void, as it regards third persons who are to be affected by it? Will not the court consider that as done which ought to have been done?

Again, here was a part performance of the contract, which takes it out of the statute. *Potter* went into possession of the land in *Pompey*, under the agreement, which was so far executed as to render the payment complete. How can it be said that *Potter* received no consideration? *Leonard* furnished the money to pay off the mortgage. *Potter* was to remain in possession, in

lieu of receiving the interest; and when the mortgage was paid off, he was to give up the possession. He did deliver up the possession to *Bristol* for the use of *Leonard;* and the inference is irresistible, that the mortgage was paid. A mortgage may be discharged by parol.* Suppose it had been given up; the possession by the mortgagor is, *prima facie,* evidence of the mortgage having been paid. That a certificate of the payment is necessary to cancel the registry, is quite a different thing. As it respected the rights of the parties, the mortgage was discharged.

SPENCER, J., delivered the opinion of the court. No objection has been made to the non registry of the mortgage, and it would have been unavailing; for *Bristol,* the agent of *Leonard,* in taking the deed and making the purchase, had full notice of the mortgage; and this was full notice to *Leonard.*

The legal title is manifestly in the lessor of the plaintiffs; and it must prevail, unless he has done some act which precludes him from resting on his mortgage. It has been urged, that *Potter's* agreement with *Bristol,* that the 1,000 dollars advanced by *Leonard* to *Bristol,* for the purpose of discharging the mortgage, should be retained by *Bristol,* and that the amount due on the mortgage should be paid by *Bristol,* by the contemplated conveyance by *Bristol* to *Potter,* of land contracted for with *Sackett,* was such an interference on the part of *Potter,* and operated so injuriously and fraudulently towards *Leonard,* that *Potter* cannot now insist on his mortgage.

It cannot be doubted, that, in consequence of *Bristol's* appropriating, to his own use, the 1,000 dollars placed in his hands by *Leonard,* to pay off the mortgage, the latter has been defrauded of that amount; but the question still returns, who has been the culpable cause of the loss? I cannot perceive that *Potter* is chargeable with any direct or constructive fraud. He knew, indeed, that *Leonard* had sent to *Bristol* 2,000 dollars; half of which was to be paid to *Foster,* for his right to the equity of redemption, and the other half in discharge of the mortgage. The agreement between *Potter* and *Bristol* may have operated to prevent the latter from paying off the mortgage; but it does not appear that *Potter* expressly agreed that *Bristol* should retain the 1,000 dollars intended to be applied to the payment of the mortgage, nor does it appear that *Potter* knew that this retainer was concealed from *Leonard.*

NEW YORK,
May, 1816

JACKSON
v.
LEONARD.

* 2 *Burr* 978, 979 11 *Johns.* *Rep.* 538.

The fact is, that the injury to *Leonard* is entirely attributable to the conduct of his own agent, *Bristol*; and it would be unjust that this loss should be sustained by *Potter*, whose conduct appears to have been fair, candid, and upright.

If it could be made out, that *Potter* derived some benefit from *Bristol's* renouncing his contract with *Sackett*, it does not occur to me that the defendants can avail themselves of that to invalidate *Potter's* mortgage. Nothing can produce that effect but a direct and positive fraud on the part of *Potter*, or an actual payment of the mortgage. Of the latter there is no pretence, and I see no evidence to warrant us in saying that *Potter* has been guilty of such a fraud as to be estopped from setting up his mortgage.

It is very questionable whether *Potter* derived any benefit from the contract between *Sackett* and *Bristol*. *Sackett* testifies, that he made no agreement with *Potter*, nor made him any offer of the land, before *Bristol* relinquished his contract.

There is nothing that can affect *Potter's* right under his mortgage.

<div align="right">Judgment for the plaintiff.</div>